## Philpot v. Commonwealth.

(Decided March 16, 1926.)

### Appeal from Bell Circuit Court.

1. Homicide—Evidence Held to Sustain Conviction of Willfully and Maliciously Shooting and Wounding with Intent to Kill.—Evidence of the actual shooting, and uncontradicted evidence that general reputation of defendant for morality was bad, held to sustain conviction of willfully and maliciously shooting and wounding with intent to kill.

2. Criminal Law—Defendant's Substantial Rights were Not Prejudiced by Refusal to Permit Answer to Question as to Witness' Difficulty with the Prosecuting Witness a Few Minutes Before the Shooting.—In prosecution for shooting with intent to kill, where defendant's witness testified that he was about 150 yards away when the shooting took place, and that about 5 or 6 minutes before the shooting he had a difficulty with prosecuting witness, defendant's substantial rights were not prejudiced by refusal to permit witness to finish answer to question as to what the prosecuting witness had done to him during that difficulty.

J. G. ROLLINS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Commissioner Hobson— Affirming.

Ed Philpot was indicted for the crime of wilfully and maliciously shooting and wounding Jess Ashburn with the intention to kill him. On the trial of the case he was found guilty and his punishment fixed at two years in the penitentiary. He appeals.

The testimony of Ashburn as to how the shooting occurred is as follows:

"I had been to Arjay to church and I was on my way home, going back down home and I met

Ches. Black and Jim Gamble in the middle of the railroad track, and as I got to them there was a railroad plate there and I struck my toe on it and pitched it out in the road by Ches. and he spoke to me and I turned around and was talking to him, and Luther Beach stepped up and asked Ches. for a match. When he gave him the match he stepped back and there was a light flashed and the shooting commenced and the first shot hit me and he shot again, it wheeled me around and the next shot glanced through the overall bib, and he shot three shots and the last shot missed me. . . . I did not see the person who fired the shots, nothing else happened except what I have stated, I did not see Philpot at all. It was at night about ten o'clock."

On the other hand Philpot's statement as to how the trouble commenced is in these words:

"I was going home from church and me and Luther Beach was together and we got to the bridge where we went across to get home, and Jim Gambrel and Chester Black was standing on the railroad and Luther Beach, he wanted a cigarette and he asked me and I told him I didn't have any and he said, 'I will step over and get one from Ches.' and me and him stopped there about where him and Jim Gambrel was and Luther asked Ches. for a cigarette and a match and we were all standing talking a friendly conversation, and Jesse Ashburn come running down the railroad and I heard him say 'God damn him, I mean to kill him,' and that kind of excited me, I didn't know what he meant and I didn't think he had anything against me, and I stepped off the railroad, I was on the end of the ties, and Luther Beach was standing next to me and these other boys in the middle of the railroad facing me and I stepped back, and the fish plate went over my head, and there was a bank back behind me and the fish plate hit on the bank and he jumped around the crowd and as I jumped backward, he jumped and grabbed me and hit me in the face with a rock in his hand. He had the rock and he threw it and then by that time he had changed hands and took something out of his other hand and had me grabbed in the breast with his left hand and when I shot him he was fixing to hit me again."

There were three other persons present; of these Luther Beach sustained the testimony of Philpot. But the other two, Jesse Ashburn and Jim Gambrel, did not sustain his testimony as to the attack made on him by Ashburn. It was also proved by a number of witnesses, without contradiction, that the general reputation of Philpot and Beach for morality was bad. Under these circumstances the court is unable to say that the verdict is palpably against the evidence.

The defendant introduced Sill Denny and proved by him that he was at the station about 150 yards away when the shooting took place, and that about five or six minutes before the shooting he saw Ashburn and had a little scrap with him. Then this follows in the bill of exceptions:

"Q. Now, without telling about the scrap or the details of it, just tell what this man Jesse Ashburn did to you, not what you did or anything or what was said, tell what was done to you some five or six minutes before this shooting? Plaintiff objects unless it was done in the presence of the defendant. The court: He can describe his conduct generally there just before the shooting occurred, but not about any scrap.

"Q. Now, a short time before this shooting occurred and at the time you saw Jesse Ashburn, tell the jury and the court just what you saw Jesse Ashburn do to anybody or anything. Just what you saw him do—his general conduct. A. All he done to me, he got me by the collar and him and me scrambled over a bank there. Plaintiff objects to the answer. The objection is sustained by the court and the jury admonished not to consider, as this was a different transaction, and what occurred between these parties is not competent."

The court is unable to see that there was any error in this. The details of Ashburn's fight with Denny could not be shown. This threw no light on what took place between Denny and Philpot when they met later. The court did not exclude the fact that Ashburn had had the scrap with Denny, for in the previous part of the testimony of Denny, referring to Ashburn and what had occurred between them, is this answer, which was not excluded. "Him and me was having a little scrap when I saw him." There is no avowal in the bill of exceptions

as to anything that Denny would state if he had been allowed to finish his answer, and the court is unable to see that any substantial right of the defendant was prejudiced on the trial.    There is no complaint of the instructions of the court or any other ruling of the court in the admission of testimony.

Judgment affirmed.